Papazian IP Law, APC

325 N. Larchmont Blvd., Ste. 172, Los Angeles, CA 90004
Tel: 562.522.4086

July 10, 2026

Hon. Alex G. Tse
450 Golden Gate Ave.
San Francisco, CA 94102

**Re:** ***Cadence Design Systems, Inc. v. Fenda USA, Inc., et al.***, Case No. 23-cv-05916-RFL (AGT) – Response to SZ Fenda's June 12, 2026 Submission

Dear Magistrate Judge Tse:

Pursuant to the Court's May 13, 2026 Discovery Order, Cadence provides the following response to the materials submitted by Defendant SZ Fenda on June 12, 2026. (*See* Dkt. Nos. 105-111).

As explained below, the Court should overrule SZ Fenda's objections, which are both untimely and erroneous, and, for the reasons set forth in Cadence's portion of the parties' May 5, 2026 Joint Discovery Letter, order SZ Fenda to (1) produce its computers for inspection forthwith in California, (2) produce documents in response to Cadence's 25 Requests for Production, and (3) provide full and complete answers to Cadence's Interrogatory Nos. 1-8, and 12. (*See* Dkt. No. 105).

SZ Fenda submitted five new declarations on June 12, 2026: (1) a declaration from counsel attaching supplemental discovery responses (Dkt. No. 107); (2) a declaration from SZ Fenda's Chinese counsel on foreign law (Dkt. No. 108); (3) a declaration from SZ Fenda's CFO on its interactions with its subsidiaries (Dkt. No. 109); (4) a declaration from SZ Fenda's IT Manager (Dkt. No. 110); and (5) a declaration from SZ Fenda's legal officer regarding alleged communications with the Chinese Ministry of Justice (Dkt. No. 111). Cadence addresses these declarations and the issues they raise below.

## I. The Court Should Overrule SZ Fenda's Foreign-Law Objections and Order Compliance

### A. <u>SZ Fenda's Objections are Untimely</u>

SZ Fenda's objections are wrong on the merits, but they are also waived in several respects.

***First***, regarding the inspections, as discussed in the parties' Joint Letter Brief (Dkt. No. 105 at 3), Judge Lin ***ordered*** SZ Fenda to raise any challenges to Cadence's inspection requests no later than April 27, 2026, which was extended from an earlier deadline set by Judge Lin. (Dkt. No. 100 ¶¶ 1, 3). SZ Fenda sought a further extension via an *ex parte* application, but Judge Lin ***denied*** the application. (Dkt. No. 104). Further, absent SZ Fenda "rais[ing] any disputes regarding the inspection with Magistrate Judge Tse before the April 27, 2026 deadline"—which Fenda did not do—Judge Lin ordered SZ Fenda "to produce the Fenda Computers for inspection" by April

27, 2026. SZ Fenda waived its right to challenge the inspection requests by May 5 (when the parties filed their joint letter in connection with Cadence's request seeking to secure compliance with Judge Lin's Order), and certainly by June 12—when SZ Fenda "supplemented" the record.

Your Honor's May 13 Discovery Order reserved ruling on Cadence's untimeliness arguments. (Dkt. No. 106 at 1, n.1). SZ Fenda cannot request an extension from the Magistrate Judge with respect to a deadline that was set by the District Court, particularly given that the District Court already denied a request to extend that deadline. This Court should reject all SZ Fenda's objections to Cadence's inspection requests as untimely and waived.

***Second***, regarding the document requests and interrogatories, SZ Fenda's June 12 supplement purports to raise ***new*** objections, which were not set forth in its prior responses. SZ Fenda's counsel confirms this, attesting that "[t]he further responses add objections based on China laws." (Dkt. No. 107 at 1, ¶ 2). For example, despite already providing self-serving responses to Cadence's interrogatory responses, SZ Fenda now objects to providing any information in response to the interrogatories, pointing to Article 294 of China's Civil Procedure Law ("CPL"). (*See, e.g.*, Dkt. No. 107 at 6-7). As to its RFP responses, SZ Fenda added the same Article 294 of the CPL objection, and added another based on Article 36 of the Data Security Law ("DSL"). (Dkt. 107 at 21).

SZ Fenda cannot add new objections months after its responses and objections were served, and more than a month after Cadence moved to compel. "Generally, a party who fails to make timely objections to a discovery request waives those objections." *Dae Sung Hi Tech Co., LTD v. D&B Sales, Inc.*, No. 2:22-CV-00030-ART-BNW, 2023 WL 5305259, at *1 (D. Nev. Aug. 17, 2023). This includes objections based on foreign laws. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992) (Chinese defendant waived objection based on Chinese state secrecy law). Based on the above, the Court should find SZ Fenda waived at least the following:

- **Requests for Inspection** (Nos. 1-3) – all objections
- **Requests for Production** (Nos. 1-25) – new objections based on Article 294 of the CPL and Article 36 of the DSL
- **Interrogatories** (Nos. 1-12) – new objection based on Article 294 of the CPL

B. <u>SZ Fenda's Foreign-Law Objections Are Borderline Frivolous</u>

Setting aside waiver, SZ Fenda's China-law objections fail, and it's not even close. As the party invoking foreign law, SZ Fenda has the burden to show the referenced laws prohibit its compliance. *Intex Recreation Corp. v. Bestway (USA), Inc.*, 2023 WL 11964260, at *2 (C.D. Cal. Oct. 30, 2023). Further, even if it could show that compliance is prohibited under foreign law, SZ Fenda would also have to show that the Court should honor those laws over U.S. law under a "comity analysis." *Id.* at *4.

Here, to justify its noncompliance, SZ Fenda points to Article 36 of the DSL, Articles 39 and 41 of the PIPL, and Article 294 of the CPL. SZ Fenda fails to meet its burden to show that

compliance is prohibited. And it does not even attempt to address the second question on comity, much less satisfy its burden. *Intex*, 2023 WL 11964260 at *4.

Enclosed with this Response is a Declaration from Xiaodong Wang ("Wang Decl."). Mr. Wang is a partner at the law firm of Global Law Office in Shanghai, China, and has been practicing law in China since 1999. Mr. Wang also received his L.L.M. from UCLA and has been admitted to the New York bar since 2008. In his Declaration, Mr. Wang responds to the statements of Mr. Kun Zhuo, SZ Fenda's declarant on Chinese law. For the reasons discussed below and in the Wang Declaration, SZ Fenda's China-law objections are incorrect and should be rejected by the Court.

**Article 36 of the DSL and Article 41 of the PIPL**. Article 36 of the DSL requires approval of the Chinese Ministry of Justice before an organization or individual in China can provide data to "foreign judicial or law enforcement authorities." (Wang Declaration ¶ 14). Article 41 of the PIPL requires similar approval for any personal information provided to "foreign judicial or law enforcement authorities." (*Id.* ¶ 15). SZ Fenda argues these laws bar it from complying with its discovery obligations under the Federal Rules. Not so.

U.S. courts reject the notion that civil discovery involves providing data to "foreign judicial or law enforcement authorities" such that it would trigger these laws. "As courts uniformly have held, Article 36 is inapplicable to any information produced in response to an FRCP discovery request." *Intex*, 2023 WL 11964260 at *3 (citation modified). Likewise, "[o]n its own terms . . . the DSL's review and approval requirements do not appear to apply to the American civil discovery process." *Philips Med. Sys. (Cleveland), Inc. v. Buan*, 2022 WL 602485, at *6 (N.D. Ill. March 1, 2022); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-01972, 2023 WL 5956992, at *4 (N.D. Ill. Sept. 12, 2023) (same). This is because, in contrast to "civil law jurisdictions where the judge takes a leading role in collecting evidence, discovery requests and responses thereto in the American common law system are traded between the parties." *Intex*, 2023 WL 11964260 at *3.

Mr. Wang confirms that the Chinese interpretation of Article 36 of the DSL and Article 41 of the PIPL is in accord with the foregoing decisions. Namely, these laws address situations in which foreign courts or law enforcement agencies seek data within China's borders—they do not apply to the exchange of discovery among private litigants. (*Id.* ¶¶ 16-31). As such, both laws are not triggered and do not prevent SZ Fenda from complying with Cadence's discovery requests. (*Id.*).

Trying to avoid this conclusion (and substantial case law), SZ Fenda's declarant, Mr. Zhuo, argues that Cadence's discovery requests are issued by a "foreign judicial agency" because Cadence's attorneys are "officers of the court" and the Court may order production of the evidence, which the parties may also submit to the court. (Dkt. No. 108 ¶ 10). This argument is a nonstarter. Lawyers are not actual "officers" or agents of the judicial branch. Courts have long recognized that "[t]he word 'officer' . . . applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term." *Cammer v. United States*, 350 U.S. 399, 405 (1956) (lawyers are private actors not "in the same category as marshals, bailiffs, court clerks or judges). Further, "[w]hile the court oversees the [discovery] process, it does not make the request and is not involved in the stewardship or use of

the exchanged information—in other words, the data is not provided 'to the U.S. court.'" *Philips*, 2022 WL 602485 at *6.

Accordingly, SZ Fenda fails to show Article 36 of the DSL or Article 41 of the PIPL bar SZ Fenda from complying with Cadence's discovery requests.

**Article 39 of the PIPL**. Mr. Zhuo and SZ Fenda also incorrectly argue that Article 39 of the PIPL precludes SZ Fenda from compliance. Namely, Mr. Zhuo opines that Article 39 of the PIPL requires that SZ Fenda first obtain the consent of all individuals whose information may be in responsive documents, information, and computers before being sent to Cadence. (Dkt. No. 108 ¶¶ 27, 30).

Several courts have already rejected this argument as incorrect even under Chinese law. Article 13 of the PIPL ***excuses*** any need for consent when, among other things, the data is being provided "to fulfill duties or obligations provided by the law." (Wang Decl. ¶ 34). That is, a party does not need to obtain consent before producing personal information in response to a duly served request under the Federal Rules because it has a legal obligation to provide the information. *Owen v. Elastos Found.*, 343 F.R.D. 268, 286 (S.D.N.Y. 2023) (overruling PIPL objection). Mr. Zhou contends that only Chinese legal obligations can excuse the consent requirement. (Dkt. No. 108 ¶ 30). But he offers no support for that assertion. Relying on Mr. Wang's testimony, Magistrate Judge Spero concluded in another Cadence litigation that "nothing in the PIPL itself indicates that the exception is limited to Chinese law," holding that the defendant's discovery obligations excused any need to obtain consent under Article 39. *See Cadence Design Sys., Inc. v. Syntronic AB*, No. 21-CV-03610-SI (JCS), 2022 WL 2290593, at *5 (N.D. Cal. June 24, 2022). In that case, the defendant's Chinese attorney opined that "obviously" the scope of the exemption was limited to obligations provided under Chinese law. *Id.* Magistrate Judge Spero rejected that argument as *ipse dixit*, pointing to another decision that construed "under law" in a Spanish statute to include non-Spanish legal obligations. *Id.* (citing *NML Cap., Ltd. v. Republic of Argentina*, No. 03 CIV. 8845 TPG, 2013 WL 491522, at *4 (S.D.N.Y. Feb. 8, 2013)).[1]

Further, Mr. Wang confirms that nothing has changed with the law since these opinions issued. (Wang Decl. ¶ 37). And while Mr. Zhuo suggests "serious consequences" will be doled out if SZ Fenda responds to Cadence's requests, despite the thousands of litigations in U.S. courts with Chinese litigants, he does not point to a single instance where a party was fined for violating the DSL or the PIPL by producing discovery materials. Mr. Wang confirms there have been no such instances. (Wang Decl. ¶¶ 39-40). SZ Fenda's trumped up claims to the contrary should be rejected.

**Article 294 of the Civil Procedure Law Does Prevent SZ Fenda's Compliance or Require Cadence to Resort to the Hague Evidence Convention**. With scant analysis, Mr. Zhuo also claims that Cadence is required to seek discovery through the Hague Evidence Convention under Article 294 of China's Civil Procedure Law. (Dkt. No. 108 ¶ 34). The argument is specious.

---

[1] Similar to the Chinese lawyer in *Syntronic*, SZ Fenda and Mr. Zhuo likewise rely on undeveloped, *ipse dixit* to argue that U.S. legal obligations are not a basis for an exemption to consent under the PIPL. (*See* Dkt. No. 108 ¶ 30).

Indeed, courts have rejected this argument, too. In *Intex*, the Chinese plaintiff claimed that Article 294's predecessor (Article 284), prevented it from producing any discovery from its Chinese affiliate without the involvement of the Chinese Ministry of Justice. The court disagreed, however, holding that "Article 284 also does not bar the discovery sought." *Intex*, 2023 WL 11964260 at *4. Because the evidence was collected by the Chinese affiliate, no foreign agency or individual was involved in the "collection of evidence in China." *Id.* Mr. Wang reaches the same conclusion under Chinese law. (Wang Decl. ¶¶ 50-51).

Further, as Mr. Wang explains, Article 294 is inapplicable for other reasons as well. This Article addresses one mechanism under which evidence can be obtained from inside China—court-to-court "judicial assistance." (Wang Decl. ¶¶ 42-52). This is clear from the text of Article 294 and the statutory scheme in which it is found. (*Id.*). Namely, Article 293 defines the scope of "Judicial Assistance" (referring to court-to-court reciprocal requests), and Article 294 then states that such court-to-court requests shall proceed through international treaties. (Wang Decl. ¶¶ 43-46).

As Mr. Wang explains, if Mr. Zhuo were correct on his interpretation, no discovery could be provided at all by a Chinese litigant without approval of the Chinese Ministry of Justice. (Wang Decl. ¶ 52). That is not the law—hundreds, if not thousands, of Chinese litigants provide discovery under the Federal Rules of Civil Procedure every day.

Mr. Zhuo's citation to *Sun Group U.S.A. Harmony City, Inc. v. CRRC Corp., Ltd.*, 2019 WL 6134958 (N.D. Cal. Nov. 19, 2019) does not change any of this analysis. The decision in that case turned on a written letter from China's Ministry of Justice ("MOJ") stating the defendant could only produce documents under the Hague Convention. *Id.* at *2. The written back-and-forth between the defendant and the MOJ is telling—the defendant asked whether it could "directly produce . . . documents . . . in China to the ***U.S. Court*** and Plaintiff." *Id.* The MOJ responded, stating that "foreign judicial departments" and "foreign countries" can only obtain discovery through the Hague Evidence Convention. *Id.* Thus, it is clear the MOJ was responding to a question about a ***judicial*** investigation. That was the wrong analysis because the discovery materials in *Sun Group* were not being sent to the Court. *Id.* However, the poorly framed question by the defendant—which suggested materials were being sent to the court—made Article 294's predecessor applicable. *Id.* The other party apparently did not contest any of this. *Id.* ("Plaintiff does not . . . contest the letter from the Chinese [MOJ].). As such, the court's reliance on the MOJ letter was misplaced. And this is not uncommon—as Mr. Wang explains, the phrasing of a question to the MOJ often determines the answer. (Wang Decl. ¶¶ 58-59). In fact, when Mr. Wang called the MOJ, he got a different response. (*Id.*).

**SZ Fenda utterly fails to address the comity factors.** Even if SZ Fenda's Chinese law objections were timely and meritorious—and clearly they are not—that would not end this Court's inquiry. Rather, as the party invoking Chinese law, SZ Fenda "must"—*i.e.*, it bears the burden to—"demonstrate that the particular facts of this case, including the sovereign interests at stake, warrant requiring the application of the Hague Convention." *Sun Group*, 2019 WL 6134958, at *3. SZ Fenda has not done that here, nor could it. Because SZ Fenda makes no attempt to address these factors, that alone requires a rejection of SZ Fenda's objections.

In short, SZ Fenda fails to show compliance with Cadence's discovery requests is banned by Chinese law. Its China-law objections should be overruled.

## II. SZ Fenda's Possession, Custody, or Control Arguments Fail

As discussed in the parties' May 5, 2026 Joint Discovery Letter, SZ Fenda contends it lacks possession, custody, or control over its subsidiaries' information, documents, and computers. The Court allowed SZ Fenda to supplement the record on the issue of control. SZ Fenda then submitted a declaration from its CFO Maolin Zhang on the interaction between SZ Fenda and its subsidiaries. (Dkt. No. 109). Mr. Zhang's declaration changes nothing.

***First***, the Court should reject SZ Fenda's arguments because it still has not identified any of its subsidiaries at issue. (*See generally* Dkt. No. 109). A party cannot generically object that the requested information is outside of its control without specifying the parties with responsive information that are allegedly outside of its control. *Bryant v. Serv. Corp. Int'l*, No. C 08-01190 SI, 2010 WL 2231869, at *1 (N.D. Cal. June 1, 2010) ("The Court agrees with plaintiffs that, to the extent SCI asserts that certain entities covered by plaintiffs' request are not within its control, SCI must identify the entities to plaintiffs rather than simply asserting a lack of control in a conclusory manner.").

***Second***, while lengthy, Mr. Zhang's declaration is off-point. The relevant question is whether SZ Fenda has ***legal control*** over its subsidiaries' documents, information, and computers, not the practical ability to obtain those items. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). There is a *per se* rule that a corporate parent has legal control over items in the possession of its wholly owned subsidiaries: "A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Cryptography Rsch., Inc. v. Visa Int'l Serv. Ass'n*, No. C04-04143 JW (HRL), 2005 WL 8162416, at *1 (N.D. Cal. Aug. 4, 2005) (control can be shown "through a parent/subsidiary corporate relationship"); *Bastida v. Nat'l Holdings Corp.*, No. C16-388RSL, 2016 WL 7427084, at *1 (W.D. Wash. Dec. 16, 2016) ("NHC is correct that the 'legal control' test determines what documents are within a corporation's control for discovery purposes, but incorrectly suggests that this test is not satisfied by a parent corporation as to its wholly owned subsidiary.").

Accordingly, Mr. Zhang's testimony regarding personnel, employment contracts, insurance, office locations, decision-making, financial metrics, accounting, and related topics are all irrelevant. (*See* Dkt. No. 109 at 1-2). Although he conceals the corporate names of the relevant subsidiaries, Mr. Zhang confirms that "SZ Fenda currently owns 100% of most of its subsidiaries." (*Id.* ¶ 2). That should end the analysis. The Court should overrule SZ Fenda's possession, custody, or control objections.

## III. SZ Fenda Fails to Show That an Inspection Would Be Improper.

As discussed above, Judge Lin has already ordered that an inspection of the Fenda Computers should proceed. In the parties' Joint Stipulation, SZ Fenda acknowledged that as early as the February 18, 2026 Case Management Conference, Judge Lin "direct[ed] SZ Fenda to make the Fenda Computers available for inspection on or before March 27, 2026," (Dkt. 100 at 2:8-9), which the Court extended to April 27, 2026. The time for SZ Fenda to challenge Cadence's

inspection requests has come and gone. There is no occasion to reopen this issue, and the Court should order SZ Fenda to produce the requested computers forthwith in Los Angeles per Cadence's inspection notice.

In any event, Cadence's request for a forensic examination of SZ Fenda's computers is amply supported. Courts recognize that inspections are appropriate where the electronic information sought is directly relevant to the claims and defenses in the action. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012) (ordering inspections over objection). This case involves allegations of software piracy by Fenda perpetrated on its corporate computers. Cadence's RFIs seek inspection of computers that have been identified through Cadence's phone-home system or otherwise possess Cadence Software, *i.e.*, the key factual inquiry in this case.

Further, SZ Fenda has failed to show a forensic examination would be improper. To begin, SZ Fenda's declarant, Mr. Xiong Jin, clearly misunderstands the scope of Cadence's RFIs—Cadence has not sought "a comprehensive inspection of all computers at Shenzhen Fenda and its affiliated companies."[2] (Dkt. No. 110 ¶ 3). Cadence's RFIs address a set of computers with Cadence Software, identified by computer hostnames and MAC addresses. (*See* Dkt. No. 105-6 at 1-7). Moreover, Mr. Jin has not made a credible showing that the parade of horribles in his declaration will ever come to bear—that is, that Cadence or its forensic expert will somehow "seriously jeopardize Shenzhen Fenda's trade secrets, cybersecurity, and personal privacy."[3] (Dkt. No. 110 ¶ 3). Setting aside the irony of an admitted software pirate complaining about IP and cybersecurity, there is a protective order in this case that can be used to govern the disclosure of the materials on SZ Fenda's computers. (*See* Dkt. No. 54). And notably, SZ Fenda has not proposed any other protections that it believes are necessary—which have also been waived. *Cf. United States v. Panhandle E. Corp.*, 118 F.R.D. 346, 350 (D. Del. 1988) (party who fails to propose a protective order regarding confidentiality by the deadline for compliance waives any such protections).

To the extent the Court considers SZ Fenda's objections to Cadence's RFIs—which it respectfully should not—they should be overruled.

## IV. Conclusion

SZ Fenda has delayed discovery long enough. It still has not produced a single document in this case, or anything more than minimal, self-serving interrogatory responses. Judge Lin entered a schedule and this matter is moving forward. The Court should order full compliance with Cadence's requests forthwith.

---

[2] Mr. Jin's misunderstanding of Cadence's RFIs renders his burden arguments inapplicable. For example, Cadence has not demanded that every computer belonging to SZ Fenda be removed from its facilities. (Dkt. No. 110 ¶ 8). SZ Fenda is arguing against an obvious strawman.
[3] Mr. Jin's discussion about Chinese law also lacks foundation—he is not an attorney or legal professional. (*See* Dkt. No. 110 ¶ 6).

DATED: July 10, 2026

By: */s/ Steve Papazian*

Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270

Steve Papazian, Bar No. 288097
steve@papazianiplaw.com
PAPAZIAN IP LAW, APC
325 N. Larchmont Blvd, Suite 172
Los Angeles, CA 90004
Telephone: (562) 522-4086

*Attorneys for Plaintiff Cadence Design Systems, Inc.*